**Emma Johnson, Administratrix, Appellee, v. Illinois Central Railroad Company, Appellant.**

NEGLIGENCE—*when wilfulness not established. Held*, under the evidence, that wilful injury of the plaintiff's intestate, who was killed while walking upon the railroad tracks of the defendant, was not established, and that the judgment rendered should be reversed with finding of facts.

Action in case for death caused by alleged wrongful act.  Appeal from the Circuit Court of Williamson county; the Hon. W. W. DUNCAN, Judge, presiding.  Heard in this court at the March term, 1911.  Reversed.  Opinion filed November 11, 1911.

WILLIAM W. CLEMENS, for appellant; W. S. HORTON, BLEWETT LEE and W. W. BARR; of counsel.

A. D. MORGAN and W. P. LIGHTFOOT, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee for damages occasioned by the death of her husband, Daniel Johnson, who was struck and killed by a locomotive engine drawing a passenger train, while he was walking upon appellant's track near Herrin, Illinois.

The several counts of the declaration alleged that said Johnson was at the time in the exercise of due care and diligence for his own safety and that the servants of defendant were guilty of gross and wanton negligence in driving and managing said locomotive engine and train and striking deceased.

The damages laid in the declaration were $10,000. The verdict and judgment were for $500.

We learn the following facts concerning the case from the record: Daniel Johnson at the time of his death, was 40 years of age and was employed as a top worker for the Big Muddy Coal and Iron Company, was earning from $2.40 to $2.45 a day as wages, and was living in one of the Coal Company's houses near its mine, located about a mile and a half east of Herrin, Illinois, just south of appellant's main track. While going home from Herrin about half past 9 o'clock on the night of January 25, 1910, and walking in company with one Mark Veach along appellant's track at a point about a half a mile east of the city limits and not at a highway crossing, Johnson was struck by the pilot on one of appellant's passenger engines drawing a regular passenger train, and killed. Appellant's track running east from the city toward said coal mine is practically straight. Near the city limits on the south side of the track is a water tank of appellant, from which there extends to the east a dump or fill for a distance of about 600 feet. This dump is about sixteen feet on

top and on the center of it is located one of appellant's main tracks, while on each side there is a pond of water. There is also on each side of the dump a rock wall and the distance from the end of the ties to the rock wall, is about three or four feet. Some 200 feet east of the west end of the dump, there is a trestle under the track, connecting the two ponds of water. The only person testifying on the part of appellee as to what occurred at the time of the injury, was said Veach. He stated that he overtook Johnson at the city limits as he was walking along the railroad track and continued with him until he was struck by the engine; that it was a bright moonlight night and as they reached the trestle he looked back and saw the passenger train coming and remarked to Johnson "Let's hurry up and get off, that is the passenger coming, I think," that "Johnson said, no, he thought it was a switch engine coming for water;" and after walking about 200 feet further, witness again remarked, "Right here we had better get off, that is the passenger train coming; it looks like it is running pretty fast" and that Johnson again replied, "No, it is the switch engine;" that he again remarked to Johnson, "There it comes, right there, you had better get off;" that he stepped off of the track, but that Johnson "who was straddling the rails" about eight feet behind him, was struck by the cow catcher and beam and pitched about thirty feet in the pond; that he heard no bell ring, nor whistle sound; that the train was running about twenty miles an hour and the speed was not slackened before Johnson was struck and the train ran some 300 feet beyond that point; that the first time he saw the train, it was west of the tank where the switch engine got water, but the second time it was 250 to 300 feet east of it; that the last time he spoke to Johnson, it was clearly perceptible that the engine was not a switch engine coming for water. The en-

gineer, Pabst, testified that he saw only one man who was walking on the right side of the track and appeared to be clear of it; that he first discovered this man when the train was 100 to 200 feet away; that he did not see Johnson until after he was struck by the beam of the cow catcher; that there was a mist which came from the water and obscured objects on the track.

The fireman testified that he did not see Johnson and he corroborated the engineer as to the presence of a mist over the track. It also appeared from the evidence that there was room for the deceased to step to the side of the track as Veach did and save himself.

It further appeared that persons going from the city to the mine, were accustomed to pass along appellant's track at the place in question, but there was nothing to show that appellant had given any one permission to do so. It is plain from a consideration of all the proofs, that appellee's intestate was not at the time he was injured in the exercise of ordinary care for his own safety.

It is charged in the declaration however, that appellant's servants wantonly and wilfully ran said locomotive against him. It is not contended by appellee that the engineer and fireman of appellant's engine intended to run Johnson down but the claim is that their management of the engine was so reckless and grossly negligent as to constitute wilfulness and wantonness on their part.

The engineer was proceeding at a moderate rate of speed, outside of the city limits at a place where no signals were required by law to be given, and the record appears to us to be devoid of evidence tending to show that he was guilty of such gross negligence, carelessness or recklessness as to amount to wantonness or wilfulness, if indeed it could be properly said that he was guilty of any negligence whatever.

The judgment in this case will be reversed and as in our opinion, the evidence in the case does not tend to

prove the charge of wilfulness and wantonness, on the part of appellant, the cause will not be remanded.

*Reversed.*

Finding of ultimate facts: We find as facts that the deceased, Daniel Johnson, was not at the time he received the injuries, which resulted in his death, in the exercise of ordinary care for his own safety; and we further find, that the servants of appellant were not on said occasion, guilty of gross and wanton negligence in driving and managing, appellant's locomotive engine and train and in striking said Johnson.